1  Mark E. Merin (State Bar No. 043849)
   Paul H. Masuhara (State Bar No. 289805)
2  LAW OFFICE OF MARK E. MERIN
3  1010 F Street, Suite 300
   Sacramento, California 95814
4  Telephone:  (916) 443-6911
   Facsimile:  (916) 447-8336
5  E-Mail:     mark@markmerin.com
               paul@markmerin.com
6
7  Attorneys for Defendants
   TANYA DANIELLE FAISON and
8  BLACK LIVES MATTER SACRAMENTO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| KARRA CROWLEY, CHRISTOPHER CROWLEY, and CROWLEY PROPERTIES,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>TANYA DANIELLE FAISON and BLACK LIVES MATTER SACRAMENTO,<br><br>　　　　　Defendants. | Case No. 2:21-cv-00778-MCE-JDP<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT**<br><br>Date:　　　June 24, 2021<br>Time:　　　2:00 p.m.<br>Location:　Robert T. Matsui U.S. Courthouse<br>　　　　　　501 I Street<br>　　　　　　Sacramento, CA 95814<br>Courtroom: 7 (14th Floor)<br>District Judge: Hon. Morrison C. England, Jr. |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................................1

II.  STATEMENT OF RELEVANT FACTS .....................................................................1

III. ARGUMENT ..................................................................................................................3

   A.   STEP ONE: THE PROTECTED ACTIVITY ........................................................4

      1.   Cal. Code Civ. Proc. § 425.16(e)(3) ...............................................................4

      2.   Cal. Code Civ. Proc. § 425.16(e)(4) ...............................................................6

   B.   STEP TWO: THE LEGAL SUFFICIENCY OF THE CLAIM ............................7

      1.   Actual Malice..................................................................................................7

      2.   Communications Decency Act, 47 U.S.C. § 230............................................8

IV. CONCLUSION..............................................................................................................11

i

**DEFENDANTS' MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT**
*Crowley v. Faison*, United States District Court, Eastern District of California, Case No. 2:21-cv-00778-MCE-JDP

# TABLE OF AUTHORITIES

CASES

*Aranda v. County of Los Angeles*, 2019 U.S. Dist. LEXIS 212005 (C.D. Cal. Aug. 1, 2019) ...................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................................8

*Barrett v. Rosenthal*, 40 Cal. 4th 33 (Cal. 2006) ................................................................................4, 9

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ..........................................................................9, 10, 11

*Bem v. Stryker Corp.*, 2015 U.S. Dist. LEXIS 141927 (N.D. Cal. Oct. 16, 2015) ....................................8

*Bernstein v. LaBeouf*, 43 Cal. App. 5th 15 (Cal. Ct. App. 2019) ..........................................................5, 6

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003) ...................................................8, 10

*Carreia v. Yates*, 2011 U.S. Dist. LEXIS 13528 (E.D. Cal. Feb. 1, 2011) ..............................................8

*Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190 (Cal. Ct. App. 2017) .......................................................4

*Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657 (1989) ..............................................................8

*Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020) .........................6

*Jamison v. McClendon*, 476 F. Supp. 3d 386 (S.D. Miss. 2020) .............................................................5

*Jonas v. Lake Cty. Leader*, 953 F. Supp. 2d 1117 (D. Mont. 2013) ........................................................4

*Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117 (E.D. Cal. 2010) .................................................................9

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014) .......................................................................9

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ........................................................................3

*Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013) ..................................................................3

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) ..........................................................3, 7

*Miller v. Nestande*, 192 Cal. App. 3d 191 (Cal. Ct. App. 1987) .............................................................7

*Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590 (9th Cir. 2010) .............................................................4

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir. 2018) ..................3

*Ricci v. Teamsters Union Local 456*, 781 F.3d 25 (2d Cir. 2015) .....................................................9, 10

*Rosenberg v. Certain Underwriters at Lloyd's*, 2018 U.S. Dist. LEXIS 231894 (C.D. Cal. June 11, 2018) ..8

*Solano v. Playgirl, Inc.*, 292 F.3d 1078 (9th Cir. 2002) ...........................................................................7

*Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206 (9th Cir. 2005) ...................................................................3

*Todd v. Lovecruft*, 2020 U.S. Dist. LEXIS 2309 (N.D. Cal. Jan. 6, 2020) ..............................................6

ii

**DEFENDANTS' MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT**
*Crowley v. Faison*, United States District Court, Eastern District of California, Case No. 2:21-cv-00778-MCE-JDP

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................................................. 3, 4

*Weinberg v. Feisel*, 110 Cal. App. 4th 1122 (Cal. Ct. App. 2003) ............................................................. 6

*Wilbanks v. Wolk*, 121 Cal. App. 4th 883 (Cal. Ct. App. 2004) ............................................................. 6, 7

*Wynn v. Chanos*, 75 F. Supp. 3d 1228 (N.D. Cal. 2014) .......................................................................... 4

*Yu v. Pearce*, No. A154761, 2019 Cal. App. Unpub. LEXIS 7422 (Cal. Ct. App. Nov. 7, 2019) ............... 4

*Zeran v. America Online*, 129 F.3d 327 (4th Cir. 1997) ......................................................................... 10

*Zeran v. Diamond Broad., Inc.*, 203 F.3d 714 (10th Cir. 2000) ................................................................ 8

## STATUTES

47 U.S.C. § 230 ........................................................................................................................................... 8

47 U.S.C. § 230(c)(1) ............................................................................................................................. 8, 9

47 U.S.C. § 230(e)(3) ................................................................................................................................. 8

47 U.S.C. § 230(f)(2) .................................................................................................................................. 9

47 U.S.C. § 230(f)(3) .................................................................................................................................. 9

Cal. Civ. Code § 45 .................................................................................................................................... 7

Cal. Code Civ. Proc. § 425.16 ............................................................................................................. 3, 11

Cal. Code Civ. Proc. § 425.16(a) ............................................................................................................... 4

Cal. Code Civ. Proc. § 425.16(c)(1) ......................................................................................................... 11

Cal. Code Civ. Proc. § 425.16(e)(3) ........................................................................................................... 4

Cal. Code Civ. Proc. § 425.16(e)(4) ....................................................................................................... 4, 6

## OTHER AUTHORITIES

Garrett Chase, *The Early History of the Black Lives Matter Movement, and the Implications Thereof*, 18
    Nev. L.J. 1091 (2018) ........................................................................................................................... 6

iii

**DEFENDANTS' MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT**
*Crowley v. Faison*, United States District Court, Eastern District of California, Case No. 2:21-cv-00778-MCE-JDP

## I.     INTRODUCTION

Defendants Tanya Danielle Faison and Black Lives Matter Sacramento specially move to strike Plaintiffs Karra Crowley, Christopher Crowley, and Crowley Properties' complaint for libel, pursuant to the Anti-SLAPP Act, Cal. Code Civ. Proc. § 425.16.

## II.    STATEMENT OF RELEVANT FACTS

Plaintiff Crowley Properties is a general partnership in which Plaintiffs Karra Crowley and Christopher Crowley, wife and husband, are general partners. (ECF No. 1 ("Compl.") ¶¶ 1-3.) Defendant Tanya Danielle Faison is the incorporator and chief executive officer of Defendant Black Lives Matter Sacramento. (Compl. ¶¶ 4-5.)

On April 25, 2021, at 9:49 a.m., <info@blacklivesmattersacramento.com>, the email address of Defendant Black Lives Matter Sacramento, received an unsolicited email from <crowleykarra64@gmail.com>, which stated:

> To whom it may concern,
>
> I am sick and tired of hearing about you guys on the news. You guys are nothing but a bunch of domestic terrorists. Crying because you can't have your way about something. Why don't you just give up, your never going to be able to change the world. EVER!!!! GROW THE FUCK UP. White lives matter !!!!
>
> Karra Crowley.
>
> Crowley Properties

(Compl. ¶ 10; *see also* Declaration of Mark E. Merin ("Merin Decl."), Ex. A.)

On April 26, 2021, at 1:54 p.m., <info@blacklivesmattersacramento.com> received a second unsolicited email from <crowleykarra64@gmail.com>, which stated:

> My husband and I are pillars in this community. We have always taught our children to fear African Americans!!!! You are nothing but thugs and low life's. Seriously why don't you guys just stop with the bullshit, your never going to change the world, so give up. White people are kings!!!! You are peasants!!!!

(Compl. ¶ 11; *see also* Merin Decl., Ex. A.)

Later, on April 26, 2021, at 1:55 p.m., <info@blacklivesmattersacramento.com> received a third unsolicited email from <crowleykarra64@gmail.com>, which stated: "Let's bring slavery back!!!!"

(Compl. ¶ 12; *see also* Merin Decl., Ex. A.)

1

**DEFENDANTS' MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT**
*Crowley v. Faison*, United States District Court, Eastern District of California, Case No. 2:21-cv-00778-MCE-JDP

Later, on April 26, 2021, at 3:57 p.m., Defendant Tanya Danielle Faison posted screenshots of the three emails received by <info@blacklivesmattersacramento.com> from <crowleykarra64@gmail.com> to the Facebook website <https://www.facebook.com/BlackLivesMatterSac>, the Facebook page of Defendant Black Lives Matter Sacramento. (Compl. ¶¶ 10-12; *see also* Merin Decl., Ex. A.) Defendant Tanya Danielle Faison posted messages "next to the above purported emails," which stated:

> So this woman Karra Crowley has been emailing us and we figured she needs to be famous. She actually owns a business called Crowley Properties in Roseville but she lives in Loomis.

(Compl. ¶ 13; *see also* Merin Decl., Ex. A.)

> HER INFORMATION HAS BEEN VERIFIED. I AM NOT GOING TO BE RESPONSIBLE FOR SHARING ADDRESSES AND PHONE NUMBERS BUT FOLKS . . . ESPECIALLY YOU LIGHTER HUED FOLKS COMING AND BEING DISRESPECTFUL . . . YOU NEED TO GET YOUR DUCKS IN A ROW BEFORE YOU COME HERE MAKING ACCUSATIONS
>
> WE KNOW HER BUSINESS ADDRESS
> WE KNOW HER PO BOX
> WE KNOW HER AND HER HUSBANDS HOME ADD
> SHE HAS BEEN VERIFIED
>
> ROSEVILLE AND LOOMIS

(Compl. ¶ 14; *see also* Merin Decl., Ex. A.)

On April 27, 2021, Plaintiff Karra Crowley posted a message to the Facebook page <https://www.facebook.com/BlackLivesMatterSac>, which stated that she did not send the emails; that the email address from which the emails were sent did not belong to her; and that she does not hold any of the views set forth in the emails. (Compl. ¶ 20; *see also* Merin Decl., Ex. A.)

On April 28, 2021, Plaintiff Karra Crowley sent an email to Defendant Tanya Danielle Faison requesting that she remove the falsely attributed emails and posts from Defendant Black Lives Matter Sacramento's Facebook page. (Compl. ¶ 21.)

On April 30, 2021, Plaintiffs Karra Crowley, Christopher Crowley, and Crowley Properties (collectively, "Plaintiffs") filed a complaint for libel against Defendants Tanya Danielle Faison and Black Lives Matter Sacramento (collectively, "Defendants"). (ECF No. 1.)

\ \ \

2

**DEFENDANTS' MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT**
*Crowley v. Faison*, United States District Court, Eastern District of California, Case No. 2:21-cv-00778-MCE-JDP

## III. ARGUMENT

The Anti-SLAPP Act, Cal. Code Civ. Proc. § 425.16, "provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotation marks omitted); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001) ("The anti-SLAPP statute was enacted to allow early dismissal of meritless [F]irst [A]mendment cases aimed at chilling expression through costly, time-consuming litigation."). A special motion to strike under the anti-SLAPP statute is available to litigants proceeding in federal court. *See*, *e.g.*, *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005).

> A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry. First, a defendant must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech. . . . Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003) (internal quotation marks & citations omitted). "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

Because the current motion is based on the legal sufficiency of the currently-operative complaint and the Fed. R. Civ. P. 12(b)(6) standard applies, *Planned Parenthood*, 890 F.3d at 834, "[a]s a general rule, a district court may not consider any material beyond the pleadings." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). However, an exception applies where—as here—"the documents are not physically attached to the complaint" but "the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them." *Lee*, 250 F.3d at 688 (internal quotation marks & alterations omitted). Plaintiffs allege that Facebook posts give rise to a claim of libel but do not attach the allegedly-defamatory material to the complaint. (*See* Compl. ¶¶ 10-14.) Accordingly, the Court may consider those Facebook posts (Merin Decl., Ex. A) because their

3

authenticity is not contested and the complaint necessarily relies on them. *See*, *e.g.*, *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1235 (N.D. Cal. 2014); *Jonas v. Lake Cty. Leader*, 953 F. Supp. 2d 1117, 1123 (D. Mont. 2013) ("The three newspaper articles described above are referred to in [the plaintiff]'s complaint and are central to his libel claims.").

### A.   STEP ONE: THE PROTECTED ACTIVITY

"A protected act of free speech includes 'any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest,' and 'any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'" *Vess*, 317 F.3d at 1110 (quoting Cal. Code Civ. Proc. § 425.16(e)(3)-(4)). "[T]he anti-SLAPP statute [is to] be 'construed broadly[.]'" *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 596 (9th Cir. 2010) (quoting Cal. Code Civ. Proc. § 425.16(a)).

#### 1.   Cal. Code Civ. Proc. § 425.16(e)(3)

An "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(3).

Public Forum: "[It] cannot be disputed that Facebook's website and the Facebook pages at issue are 'public forums,' as they are accessible to anyone who consents to Facebook's Terms." *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 199 (Cal. Ct. App. 2017) (quotation marks omitted); *Yu v. Pearce*, No. A154761, 2019 Cal. App. Unpub. LEXIS 7422, at *13 (Cal. Ct. App. Nov. 7, 2019); *see also Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 (Cal. 2006) ("Web sites accessible to the public … are 'public forums' for purposes of the anti-SLAPP statute."). Plaintiffs allege that "Defendants posted" the email communications at issue "on the [Black Lives Matter] Sacramento Facebook page (https://www.facebook.com/BlackLivesMatterSac)..." (Compl. ¶ 10.) Thus, the communications at issue were made in a "public forum," pursuant to Cal. Code Civ. Proc. § 425.16(e)(3).

Public Issue or Matter of Public Interest: "To determine whether challenged speech or other conduct involves a public issue or a matter of public interest, courts look to certain specific

4

**DEFENDANTS' MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE COMPLAINT**
*Crowley v. Faison*, United States District Court, Eastern District of California, Case No. 2:21-cv-00778-MCE-JDP

considerations," including "whether the subject of the speech or activity was a person or entity in the public eye or could affect large numbers of people beyond the direct participants," and "whether the activity occurred in the context of an ongoing controversy, dispute or discussion," or "affected a community in a manner similar to that of a governmental entity." *Bernstein v. LaBeouf*, 43 Cal. App. 5th 15, 22-23 (Cal. Ct. App. 2019) (internal quotation marks, citations & alterations omitted). Generally, a two-part test is used to determine whether speech or conduct was made "in connection with" an issue of public interest: (1) a determination of "what public issue or issue of public interest the speech in question implicates," which is "answer[ed] by looking to the content of the speech"; and (2) a determination of "what functional relationship exists between the speech and the public conversation about some matter of public interest." *Id.* at 149-50 (internal quotation marks & alterations omitted).

First, the speech at issue implicates the opinions of "pillars in this community" (Compl. ¶ 11) with respect to the legitimacy and effectiveness of the Black Lives Matter civil rights movement. The emails published by Defendants demonstrate various themes: (1) the asserted unreasonableness of the Black Lives Matter movement—*i.e.*, "You guys are nothing but a bunch of domestic terrorists. Crying because you can't have your way about something. . . GROW THE FUCK UP."; "You are nothing but thugs and low life's."; (2) the overall futility of Black Lives Matter movement—*i.e.*, "Why don't you just give up, your never going to be able to change the world. EVER!!!!"; "Seriously why don't you guys just stop with the bullshit, your never going to change the world, so give up."; and (3) white supremacy—*i.e.*, "White lives matter !!!!"; "We have always taught our children to fear African Americans!!!!"; "White people are kings!!!! You are peasants!!!!"; "Let's bring slavery back!!!!" (*See* Compl. ¶¶ 10-12.)

Second, there is a functional relationship between the emails and the public conversation about the content of those emails. The emails espouse a counterpoint to the Black Lives Matter movement and demonstrate what the movement's participants are "up against." Indeed, the emails purportedly come from asserted "pillars in this community." (Compl. ¶ 11.) Of course, racial equality issues are a quintessential "public interest"—especially to those racial minorities most largely impacted by the adverse effects of systemic racial inequality in this country. These issues have been deeply entrenched in this country's troubling history from its inception. *See Jamison v. McClendon*, 476 F. Supp. 3d 386, 397-401 (S.D. Miss. 2020). "Black Lives Matter has made its mark on American history and has evolved

5

from the passionate social media posts that marked its inception to a nationwide civil rights movement." Garrett Chase, *The Early History of the Black Lives Matter Movement, and the Implications Thereof*, 18 Nev. L.J. 1091, 1112 (2018). Most recently, following the murder of George Floyd by Minneapolis police officer Derek Chauvin on May 25, 2020, "[a] video showing the last minutes of Floyd's life was circulated nationwide, and it ignited protests across the country in support of the Black Lives Matter movement." *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 821 (9th Cir. 2020). In short, the negative attitudes expressed in these emails directed towards the Black Lives Matter civil rights movement *as a whole* is "something of concern to a substantial number of people," *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (Cal. Ct. App. 2003)—especially the membership of Black Lives Matter Sacramento's Facebook page. Plaintiffs allege as much; Black Lives Matter Sacramento's Facebook page has "71,739 people follow[ing] it"; the emails garnered "284 'Reactions,' 120 'Comments,' and 183 'Shares'"; and Plaintiff Karra Crowley was interviewed by Fox40 News about the controversy. (Compl. ¶ 18.) *See, e.g.*, *Todd v. Lovecruft*, 2020 U.S. Dist. LEXIS 2309, at *44 (N.D. Cal. Jan. 6, 2020) ("Publicly accusing individuals of [misconduct] is unquestionably controversial, but the controversy itself serves to demonstrate that it is a matter of public interest and debate. . . For the purposes of this anti-SLAPP inquiry [] the public has an interest in identifying individuals who commit [the alleged misconduct, which] are matters of public concern.").

### 2. Cal. Code Civ. Proc. § 425.16(e)(4)

An "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(4).

The "same analysis" applies to the existence "a public issue or a matter of public interest" under Cal. Code Civ. Proc. § 425.16(e)(3) and (4). *Bernstein*, 43 Cal. App. 5th at 23 n.5. The only difference is that, "even if [the defendant]'s communications were not made in a public forum, and therefore do not fall under section 425.16, subdivision (e)(3), they fall under subdivision (e)(4)." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897-98 (Cal. Ct. App. 2004). Accordingly, for the same reasons that an "issue of public interest" exists under Cal. Code Civ. Proc. § 425.16(e)(3), as discussed above, the same "public

6

issue" or "issue of public interest" exists under Cal. Code Civ. Proc. § 425.16(e)(4). *See id.*

## B.   STEP TWO: THE LEGAL SUFFICIENCY OF THE CLAIM

Plaintiffs' complaint alleges a single claim of libel against Defendants. (ECF No. 1.) "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45.

### 1.   Actual Malice

As discussed above, Defendants' speech implicated a public issue or a matter of public interest. "Because the [D]efendants' speech addressed a matter of 'public concern,' [Plaintiffs] must show that the statements were false and made with 'actual malice.'" *See*, *e.g.*, *Metabolife Int'l*, 264 F.3d at 840; *Miller v. Nestande*, 192 Cal. App. 3d 191, 197-98 (Cal. Ct. App. 1987).

> The actual malice standard is not satisfied merely through a showing of ill will or "malice" in the ordinary sense of the term. Nor can the fact that the defendant published the defamatory material in order to increase its profits suffice to prove actual malice. Actual malice, instead, requires at a minimum that the statements were made with a reckless disregard for the truth. And although the concept of "reckless disregard" cannot be fully encompassed in one infallible definition, we have made clear that the defendant must have made the false publication with a high degree of awareness of probable falsity, or must have entertained serious doubts as to the truth of his publication.
>
> \* \* \*
>
> Reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

*Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1084-85 (9th Cir. 2002) (internal quotation marks, alterations & citations omitted).

Plaintiffs allege that they did not "wr[i]te or sen[d] the emails posted by Defendants" (Compl. ¶ 16) and that "Defendants did not use reasonable care to determine whether Plaintiffs, or either of them, were the authors or senders of the purported emails from Ms. Crowley, which Defendants attributed to Plaintiffs nonetheless" (Compl. ¶ 22). Plaintiffs' allegations are legally insufficient for two reasons.

First, Plaintiffs' allegations are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice" under Fed. R. Civ. P. 12(b)(6).

7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, a mere allegation that a "[d]efendant 'failed to use reasonable care'" is "insufficient to create a plausible inference of liability on the part of [d]efendant." *See*, *e.g.*, *Rosenberg v. Certain Underwriters at Lloyd's*, 2018 U.S. Dist. LEXIS 231894, at *5 (C.D. Cal. June 11, 2018); *Aranda v. County of Los Angeles*, 2019 U.S. Dist. LEXIS 212005, at *15-16 (C.D. Cal. Aug. 1, 2019); *Bem v. Stryker Corp.*, 2015 U.S. Dist. LEXIS 141927, at *3-4 (N.D. Cal. Oct. 16, 2015); *Carreia v. Yates*, 2011 U.S. Dist. LEXIS 13528, at *6 (E.D. Cal. Feb. 1, 2011).

Second, Plaintiffs' allegations are insufficient to satisfy the "actual malice" standard. Specifically, Plaintiffs' allegations that "Defendants did not use reasonable care to determine whether Plaintiffs, or either of them, were the authors or senders of the purported emails from Ms. Crowley" (Compl. ¶ 22) does not demonstrate "reckless disregard for the truth," including Defendants' "high degree of awareness of probable falsity" or "entertain[ing] serious doubts as to the truth of [the] publication." *See Solano*, 292 F.3d at 1084-85. Actual malice may not be inferred solely from evidence of personal spite, ill will, or bad motive. *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 666-67 & n.7 (1989). Similarly, mere failure to investigate the truthfulness of a statement, even when a reasonably prudent person would have done so, is insufficient. *Id*. at 688. Yet, that is all that Plaintiffs have alleged in support of their claim. (*See* Compl. ¶ 22.) *E.g.*, *Zeran v. Diamond Broad., Inc.*, 203 F.3d 714, 721 (10th Cir. 2000) (no recklessness found where radio announcer's broadcast inaccurately attributed an offensive internet advertisement to the plaintiff, even though the host failed to verify the accuracy of the information).

### 2. Communications Decency Act, 47 U.S.C. § 230

The Communications Decency Act, 47 U.S.C. § 230, provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," *id*. § 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id*. § 230(e)(3). "§ 230(c) provides broad immunity for publishing content provided primarily by third parties." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). "The Communications Decency Act mandates dismissal if (i) [the defendant] is a 'provider or user of an interactive computer service,' (ii) the information for which [the plaintiff] seeks to hold [the defendant] liable was 'information provided by another information content provider,' and (iii) the complaint seeks to hold [the

8

defendant] liable as the 'publisher or speaker' of that information." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014) (quoting 47 U.S.C. § 230(c)(1)). "In short, a plaintiff defamed on the internet can sue the original speaker, but typically cannot sue the messenger." *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015) (internal quotation marks omitted).

First, "[t]he term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). Plaintiffs allege that Defendants "posted" the three emails on Defendant Black Lives Matter Sacramento's Facebook page (Compl. ¶¶ 10-12) and that the "Defendants' Facebook posts are libelous on their face" (Compl. ¶ 17). "Facebook qualifies as an interactive computer service." *Klayman*, 753 F.3d at 1357. Defendants qualify as "'users' of such services." *Batzel v. Smith*, 333 F.3d 1018, 1030 (9th Cir. 2003) (quoting 47 U.S.C. § 230(c)(1)); *see also Barrett v. Rosenthal*, 40 Cal. 4th 33, 58-59 (Cal. 2006).

Second, "[t]he term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). In this case, the "pertinent question [is] whether [the third party] was the sole content provider of [the] e-mail[s], or whether [Defendants] can also be considered to have 'creat[ed]' or 'develop[ed]' [the third party]'s e-mail message forwarded to the [Facebook page]." *Batzel*, 333 F.3d at 1031. Plaintiffs allege that the third party sent the three emails to Defendants and "Plaintiffs [did not] wr[i]te or sen[d] the emails posted by Defendants." (Compl. ¶ 16.) The "emails" at issue were sent from <crowleykarra64@gmail.com> to <info@blacklivesmattersacramento.com>. (Merin Decl., Ex. A.) The third party created and sent the emails from <crowleykarra64@gmail.com>, a Google email account. Google "meets the definition of a protected interactive computer service..." *See*, *e.g.*, *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1123 (E.D. Cal. 2010). A "user is immune from liability under § 230(c)(1) when a third person or entity that created or developed the information in question furnished it to the … user under circumstances in which a reasonable person in the position of the … user would conclude that the information was provided for publication on the Internet or other 'interactive computer service.'" *Batzel*, 333 F.3d at 1034. "So long as

9

a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the editing or selection process." *Carafano*, 339 F.3d at 1124.

Third, Plaintiffs seek to hold Defendants liable for defamation based on the "Facebook posts" which shared the allegedly-defamatory emails created by the third party (Compl. ¶ 17) because "Defendants did not use reasonable care to determine whether Plaintiffs … were the authors or senders of the purported emails..." (Compl. ¶ 22). But "[Defendants] cannot be considered the content provider of [the third party]'s e-mail for purposes of § 230." *Batzel*, 333 F.3d at 1031. In other words, Plaintiffs cannot "cannot sue the messenger." *Ricci*, 781 F.3d at 28 (internal quotation marks omitted).

For example, in *Zeran v. America Online*, 129 F.3d 327 (4th Cir. 1997), "an unidentified person posted a message on an AOL bulletin board advertising 'Naughty Oklahoma T-Shirts' . . . featuring offensive and tasteless slogans" related to the Oklahoma City bombing. *Id*. at 329. "Those interested in purchasing the shirts were instructed to call 'Ken' at [the plaintiff]'s home phone number…" *Id*. "As a result of this anonymously perpetrated prank, [the plaintiff] received a high volume of calls, comprised primarily of angry and derogatory messages, but also including death threats." *Id*. "Over the next four days, an unidentified party continued to post messages on AOL's bulletin board, advertising additional items including bumper stickers and key chains with still more offensive slogans." *Id*. The plaintiff began "receiving an abusive phone call approximately every two minutes." *Id*. Meanwhile, an Oklahoma City radio station announcer "related the message's contents on the air, attributed them to 'Ken' at [the plaintiff]'s phone number, and urged the listening audience to call the number." *Id*. "After this radio broadcast, [the plaintiff] was inundated with death threats and other violent calls from Oklahoma City residents." *Id*. The plaintiff filed suit against the radio station and AOL but "did not bring any action against the party who posted the offensive messages." *Id*. AOL was entitled to immunity because "[distributor] liability is merely a subset, or a species, of publisher liability, and is therefore also foreclosed by § 230." *Id*. at 332. "If the original party is considered a publisher of the offensive messages, [the plaintiff] certainly cannot attach liability to [the defendant] under the same theory without conceding that [the defendant] too must be treated as a publisher of the statements." *Id*. at 333.

Similarly, in *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003), Smith sent an e-mail to Cremers, who maintained a website for stolen artwork, stating his belief that Batzel was in possession of paintings

10

looted during WWII which were the "rightful legacy of the Jewish people." *Id*. at 1020-21. "After receiving it, Cremers published Smith's e-mail message to the [website], with some minor wording changes, on the [website] listserv," where the "website and listserv mailings are read by hundreds of museum security officials, insurance investigators, and law enforcement personnel around the world, who use the information in the [website] posting to track down stolen art." *Id*. at 1022. Subsequently, Batzel filed suit against Smith, Cremers, and the website. *Id*.

> Obviously, Cremers did not create Smith's e-mail. Smith composed the e-mail entirely on his own. Nor do Cremers's minor alterations of Smith's e-mail prior to its posting or his choice to publish the e-mail (while rejecting other e-mails for inclusion in the listserv) rise to the level of "development." As we have seen, a central purpose of [§ 230] was to protect from liability service providers and users who take some affirmative steps to edit the material posted. Also, the exclusion of "publisher" liability necessarily precludes liability for exercising the usual prerogative of publishers to choose among proffered material and to edit the material published while retaining its basic form and message.
>
> The "development of information" therefore means something more substantial than merely editing portions of an e-mail and selecting material for publication. Because Cremers did no more than select and make minor alterations to Smith's e-mail, Cremers cannot be considered the content provider of Smith's e-mail for purposes of § 230.

*Id*. at 1031 (fns. omitted).

## IV. CONCLUSION

Defendants' speech concerned a public issue or a matter of public interest, and Plaintiffs have not stated a legally sufficient claim for libel. Accordingly, this Court should: (1) strike the complaint pursuant to Cal. Code Civ. Proc. § 425.16, with prejudice, because Plaintiffs cannot cure the legal insufficiency through amendment; and (2) permit Defendants to file a motion for attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 425.16(c)(1).

Dated: May 19, 2021

Respectfully Submitted,
LAW OFFICE OF MARK E. MERIN

By: _____
    Mark E. Merin
    Paul H. Masuhara

    Attorneys for Defendants
    TANYA DANIELLE FAISON and
    BLACK LIVES MATTER SACRAMENTO

11