UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARRA CROWLEY, CHRISTOPHER CROWLEY, and CROWLEY PROPERTIES,<br><br>    Plaintiffs,<br><br>    v.<br><br>TANYA DANIELLE FAISON and BLACK LIVES MATTER SACRAMENTO,<br><br>    Defendants. | No. 2:21-cv-00778-MCE-JDP<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiffs Karra Crowley, Christopher Crowley, and Crowley Properties (collectively "Plaintiffs" unless otherwise indicated) seek damages for libel against Defendants Tanya Danielle Faison and Black Lives Matter Sacramento ("BLM") as a result of BLM's posting of racist emails purportedly sent to BLM by Karra Crowley. Federal jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332.

Several motions are presently before the Court. First, Defendants have filed a Special Motion to Strike Plaintiffs' Complaint (ECF No. 7) pursuant to California Code of Civil Procedure § 425.16, the state's so called Anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute. Second, Defendants concurrently filed, along with

1

their Special Motion to Strike, a Motion to Dismiss (ECF No. 8) brought under Federal Rule of Civil Procedure 12(b)(6) alleging that Plaintiffs' Complaint fails to state any viable claim against Defendants in any event.  Finally, Plaintiffs have filed a Motion to File First Amended Complaint (ECF No. 14) on grounds that since its filing they have determined the identity of the person who in fact sent the offensive emails and wish to add that individual as a Defendant, along with an additional cause of action for intentional infliction of emotional distress.

As set forth below, Defendants' Motions are DENIED and Plaintiffs' Motion to Amend will be GRANTED.[1]

## BACKGROUND[2]

Plaintiffs Karra and Christopher Crowley, who now reside in Rockport, Texas, operate a general partnership, Plaintiff Crowley Properties, a company managing certain properties in the Loomis and Roseville areas in metropolitan Sacramento.  Defendant Tanya Danielle Faison is the incorporator and Chief Executive Officer of Sacramento's BLM organization, which is also a named Defendant in this lawsuit.

On or about April 25, 2021, an email address purportedly assigned to Karra Crowley (crowleykarra64@gmail.com) sent the following email to BLM via its general (info@blacklivesmattersacramento.com) address.

> To whom it may concern,
>
> I am sick and tired of hearing about you guys on the news. You guys are nothing but a bunch of domestic terrorists. Crying because you can't have your way about something. Why don't you just give up, your [sic] never going to be able to change the world.  EVER!!!!  GROW THE FUCK UP. White lives matter!!!!

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

[2] Unless otherwise noted, this background section is drawn, at times verbatim, from the allegations contained in Plaintiffs' Complaint.

2

>       Karra Crowley
>       Crowley Properties

Pls.' Compl., ¶ 10.

Defendant Faisson responded later that same day on behalf of BLM, using an email address, tanya@blacklivesmattersacramento.com, that apparently belongs to her:

> Yet you took the time out to email us and we don't know or care who you are or what you feel like. If you are tired of hearing about BLM stop contacting us.

Pls.' Opp. to Mot. to Strike, Ex. A, ECF No. 11-4.

That prompted the following retort from "Karra Crowley" the next day, April 26, 2021:

> My husband and I are pillars in this community. We have always taught our children to fear African Americans!!!! You are nothing but thugs and low life's (sic). Seriously why don't you guys just stop with the bullshit, your (sic) never going to change the world, so give up. White people are kings!!!! You are peasants!!!!

Compl., ¶ 11.

A minute later, another email was sent with the single sentence "Let's bring slavery back!!!!" Id. at ¶ 12, Ex. A. to Pls.' Opp.

Defendants then proceeded to post the above emails to BLM's Facebook page on April 26, 2021, at approximately 3:57 p.m. with the following explanatory note:

> So this woman Karra Crowley has been emailing us and we figured she needs to be famous. She actually owns a business called Crowley Properties in Roseville but she lives in Loomis.

Compl, ¶ 13; Decl. of Karra Crowley, ECF No. 11-1, ¶ 8.

Karra Crowley states that just 18 minutes later, at approximately 4:15 p.m. she received a phone call from her assistant and was advised to look at both BLM's and Crowley Properties' Facebook pages because they were "blowing up" with hateful comments and threats. Ms. Crowley states that she subsequently looked at the pages and was horrified to read the statements attributed to her. Crowley Decl., ¶ 11.

Ms. Crowley states she proceeded to send the following response directly to Tanya Faison by email at 4:36 p.m.:

> Tanya,
>
> I do not know who sent you those hateful emails, but it was not me! That is not my email address and I have no idea who is behind this. Anyone who knows me knows I would NEVER EVER say those things nor would I use that filthy language. I would greatly appreciate it if you would remove your posts containing false information about me immediately.
>
> Respectfully,
>
> Karra Crowley

Id. at ¶ 11.

While Ms. Crowley states she never received a response from Ms. Faison to this request, Defendants did add the following to BLM Facebook page less than an hour later, at 5:11 p.m:

> HER [Karra Crowley's] INFORMATION HAS BEEN VERIFIED. I AM NOT GOING TO BE RESPONSIBLE FOR SHARING ADDRESSES AND PHONE NUMBERS BUT FOLKS . . . ESPECIALLY YOU LIGHTER HUED FOLKS COMING AND BEING DISRESPECTFUL . . . YOU NEED TO GET YOUR DUCKS IN A ROW BEFORE YOU COME HERE MAKING ACCUSATIONS
>
> WE KNOW HER BUSINESS ADDRESS
>
> WE KNOW HER PO BOX
>
> WE KNOW HER AND HER HUSBANDS HOME ADD (sic)
>
> SHE HAS BEEN VERIFIED
>
> ROSEVILLE AND LOOMIS

Id. at ¶ 12.

Plaintiffs claim that almost immediately after Defendants' Facebook posts, they received a barrage of hateful comments both through phone calls, voicemail, and postings on Crowley Property's Facebook page. Compl., ¶ 19, Crowley Decl., ¶¶ 15-17. Those comments included accusations that Karra Crowley was "a sick racist freak" and

///

"a garbage human." Other posts called on people "not to rent from her" or "support [a] business" run by this "disgusting human." See Crowley Decl., Ex. B.

In addition, Defendants' posting themselves had, within just two days (by April 28, 2021), prompted 284 "Reactions," 120 "Comments," and 183 "Shares." Fox 40 News, a local television channel in Sacramento, contacted Mr. Crowley who "felt compelled to do an interview to try to mitigate the damage." Compl., ¶ 18. Karra Crowley was also contacted by and gave interviews to the Sacramento Bee newspaper and three other news stations. Crowley Decl., ¶ 23.

Karra Crowley herself posted a comment on Defendants' Facebook page which directly responded to the posts. Her response of April 27, 2021, the day after the postings were first made, stated as follows:

> My name is Karra Crowley and I am NOT the person who wrote those despicable emails. The email crowleykarra64@gmail.com does not belong to me nor do I have any affiliation with it. I absolutely do not share the views expressed in those emails and anyone who knows me would confirm that. If you truly want to get to the bottom of this, you need to find out who created that email.

Crowley Decl., ¶ 18.

The following day, April 28, 2021, Karra Crowley received a death threat on her home phone number. Id. at ¶ 20. On April 30, 2021, a sign on white poster board and suspended on shovels inserted into the ground (which Crowley interpreted as a threat to bury her) was placed across the street on a property facing the Crowleys' driveway. The sign read:

> KARRA --- FUCK YOU, YOU RACIST CUNT!
>
> *Be a decent person, it's not that hard just like it's not that hard to find someones (sic) address*

Crowley Decl., ¶ 20.

Even a month later, Christopher Crowley received texts containing utterly vile threats. The following May 25, 2021, message is illustrative:

///

5

> You fucked with the wrong people old man.  So what's going to happen is I'm first going to kill your ugly wife.  I'm going to cut her from her smelly cunt all the way up to her throat then carefully take out her intestines and tack them to the wall.  Then I'm going after your daughter. I am going to cut her stomach open and then pull her intestines out and shove them down her throat.  I know where everyone lives.  Oh yes. And if you think of calling the cops I don't believe they'll be able to help you before I get to everyone.

Decl. of Christopher Crowley, ECF No. 11-2, Ex. C.

Other texts, sent the same day, indicated that Crowley's attorney was "a dead man and so are you and your cunt wife and daughter," promised that there would "be a mass shooting at your lawyers [sic] office tomorrow [with] multiple dead", and stated that "I may even kill your grandchild.  You won't see it coming either."  Id.

According to Plaintiffs, Defendants still refuse to remove the offensive posts from BLM's Facebook page.  Plaintiffs filed the present lawsuit on April 30, 2021, just four days after Defendants' postings to that page.

Plaintiffs' initial attempts to identify the individual who sent the emails underlying this lawsuit were stymied when investigation revealed that a so-called "burner" email was used, where the alleged imposter had only recently created an email address unconnected with any other associated phone numbers, emails or social media accounts that would permit investigation.  Karra Crowley Decl., ¶ 14.  On August 2, 2021, however, well after Defendants' two motions were filed in May of 2021, Plaintiffs filed a Motion to File First Amended Complaint, on grounds that through the use of warrants, the Placer County Sheriff[3] had recently ascertained the sender to be one Robert Leslie Adair.  In addition to amending the Complaint to include Adair as a Defendant, Plaintiffs also seek to add a second count alleging intentional infliction of emotional distress.

///

///

///

---

[3] Karra Crowley filed a report with the Placer County Sheriff on April 26, 2021, the same day she discovered that the offensive emails had been sent under her name.  Id. at ¶ 13.

# STANDARD

### A. Anti-SLAPP Motion to Strike

A plaintiff's claim which arises from an act, by a defendant, made in furtherance of that defendant's "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue," has no merit and will not stand under California's anti-SLAPP statute. Cal. Code of Civ. P. § 425.16(b)(1). A defendant may use an anti-SLAPP motion to strike in federal court. Thomas v. Fry's Electronics, Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005). Anti-SLAPP safeguards are designed to "protect individuals from meritless, harassing lawsuits whose purpose is to chill protected expression." Metabolife Intern. Inc. v. Wornick, 264 F.3d 832, 837, n.7 (9th Cir. 2001).

"[S]ection 425.16 expressly 'defines the kinds of claims that are subject to the anti-SLAPP procedures.'" City of Cotati v. Cashman, 29 Cal. 4th 69, 75 (2002) (citing Chavez v. Mendoza, 94 Cal. App. 4th 1083, 1087 (2001)). Under that statute, protected activities include:

> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e)(3-4).

Ruling upon an anti-SLAPP motion entails a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . if the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." Equilon Enterprises, LLC v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002). "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action, but, rather, the defendant's <u>activity</u> that gives rise to his or her

7

asserted liability - - and whether that activity constitutes protected speech or petitioning." Navellier v. Sletten, 29 Cal. 4th 82, 92 (2002) (emphasis in original).  Consequently, a trial court must initially "focus on the substance of the plaintiff's lawsuit in analyzing the first prong of a special motion to strike."  Flores v. Emerich & Fike, 416 F. Supp. 2d 885, 897 (E.D. Cal. 2006), citing Scott v. Metabolife Intern., Inc., 115 Cal. App. 4th 404, 413-14 (2004).  As the California Supreme Court has noted, the critical point in that regard "is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech."  City of Cotati, 29 Cal. 4th at 78.  To that end, "[a] defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)." Id.

If the court finds that the first step for adjudicating an anti-SLAPP motion is satisfied, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim.  Cal. Code Civ. P. 425.16(b)(1).  Equilon Enterprises, 29 Cal. 4th at 67.  In making that determination, the court considers the pleadings, as well as supporting and opposing affidavits setting forth the facts upon which liability or defense are based.  Cal. Code Civ. P. § 425.16(b)(2).  The anti-SLAPP statute must be construed broadly in order to both encourage continued participation in matters of public significance and to restrict the chilling of such protected activity through abuse of the judicial process.  Id. at § 425.16(a).

**B.    Motion to Dismiss**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

8

47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**C.  Motion to Amend**

Rule 15(a), under which Plaintiffs' Motion is brought, provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The policy of favoring amendments to pleadings, as evinced by Rule 15(a), "should be applied with extreme liberality." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad

9

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" Sonoma County Ass'n of Retired Emps. v. Sonoma County, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

## ANALYSIS

As indicated above, the sole cause of action asserted in Plaintiffs' currently operative Complaint is for libel. Under California law, "[l]ibel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. Statements that a person made racist comments are libel per se. Samaan v. Sauer, No. 2:07-cv-00960-JAM-GGH, 2008 WL 4279385 at *3 (E.D. Cal. Sept. 11, 2008). "Falsely ascribing statements to a person which would have the same damaging effect as a defamatory statement about him is [also] libel." Selleck v. Globe Int'l, Inc., 166 Cal. App. 3d 1123, 1132 (1985).

Defendants have challenged the sufficiency of Plaintiffs' Complaint in two ways. First, because they argue that their right to free speech is implicated by Plaintiffs' lawsuit, Defendants claim they are entitled to anti-SLAPP protection, which makes it necessary for Plaintiffs to show some probability of prevailing on the merits in order to proceed forward with the instant lawsuit. Second, by way of their motion to dismiss for failure to state a viable claim, Defendants also assert that Plaintiffs cannot in any event state an actionable libel claim because statutory privileges insulate Defendants from liability. Defendants' Motions will be addressed in turn.

///
///

A.    **Anti-SLAPP Motion**

The Ninth Circuit has expressly adopted the two-step process, identified by California courts and described above, in ruling upon the merit of a special motion to strike under the anti-SLAPP statute, Civil Code § 425.16.  Consequently, the Court's first job here is to assess whether the subject matter of Plaintiffs' lawsuit implicates Defendants' free speech rights.  The Ninth Circuit has also reiterated, in line with the California cases, that the requisite free speech must be a written or oral statement made in "a public forum in connection with an issue of public interest" or, alternatively, constitute "other conduct" in furtherance of such an issue.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1110 (9th Cir. 2003).  Thus, the protected activity can either be statements or conduct so long as a public interest is implicated.  Defendants have the initial burden of making that showing.  Equilon Enterprises, LLC v. Consumer Cause, Inc., 29 Cal. 4th at 67.  Once Defendants' burden is met the Court must next determine "whether the plaintiff has demonstrated sufficient minimal merit to be allowed to proceed."  Weinberg v. Feisel, 110 Cal. App. 4th 1122, 1130 (2003) (citing Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002)).  In the instant case, Defendants' Motion must be dismissed because, even assuming Defendants statements were made in a public forum in connection with a matter of public interest, Plaintiffs have met their responding burden to establish the potential merit of their claims.

The required showing of probability on the merits is not a particularly onerous one.  "[T]he plaintiff must establish that the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited."  Metabolife, Int'l, Inc. v. Wornick, 264 F.3d at 840; City of Montebello v. Vasquez, 1 Cal. 5th 409, 420 (2016) (plaintiff need only show "minimal merit" to satisfy burden; his or her evidence is accepted as true with defendant's evidence evaluated to determine if it defeats the plaintiff's showing as a matter of law).  As the Ninth Circuit noted in Metabolife, the plaintiff's burden "is 'much like that used in determining a motion for nonsuit or directed verdict,' which mandates dismissal when "no

reasonable jury" could find for the plaintiff." 264 F.3d at 840, citing Wilcox v. Superior Court, 27 Cal. App. 4th 809, 823-24 (1994). Defendants make two arguments to show that Plaintiffs' libel claim lacks the prima facie evidentiary basis to proceed: (1) that Plaintiffs have not demonstrated the potential for actual malice; and (2) that the federal Communications Decency Act, 47 U.S.C. § 230, mandates dismissal in any event. Both those assertions are addressed in turn.

### 1. Actual Malice

Defendants correctly point out that Plaintiffs must ultimately show that the challenged statements were both false and that they were made with "actual malice." See, e.g., Metabolife Int'l, 264 F.3d at 840. As the Ninth Circuit noted in Solano v. Playgirl, Inc., 292 F.3d 1078, 1084-85 (9th Cir. 2002), "[t]he actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term…. instead, [it] requires . . . that the statements were made with a reckless disregard for the truth." Consequently, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Id. at 1085. As the Solano court went on to observe, whether or not the defendant "in fact entertained serious doubts as to the truth of the statement may be proved by inference, as it would be rare for a defendant to admit such doubts. A court typically will infer actual malice from objective facts." Id.

Plaintiffs' Complaint avers that they neither "wrote [n]or sent the emails posted by Defendants" and that Defendants' statements that Karra Crowley sent the emails were false. Pls.' Compl., ¶ 16. As set forth in the background section above, after an individual purporting to be Karra Crowley sent three emails to Defendants' general email address on April 25 and 26, 2021, Defendants posted them to BLM Sacramento's Facebook page at 3:57 p.m., just over two hours after the last email had been sent to BLM at 1:55 p.m. See Karra Crowley Decl., ¶¶ 4-8. The emails were posted together with a message that "we [Defendants] figured she [Karra Crowley] needs to be famous," and went on to identify Ms. Crowley as owning a business called Crowley Properties in

Roseville and living in Loomis. Id. at ¶ 8.

Less than an hour after BLM's posting of the messages and its "call-out" to make Crowley "famous," Karra Crowley wrote to Defendant Tanya Faison directly and explained that she had not written the emails and that an address not belonging to her had been used. Ms. Crowley asked that Faison "remove your posts containing false information about me immediately." Id. at ¶ 11. Defendants not only refused to do so, they also made yet another posting 35 minutes after Karra Crowley's email, at 5:11 p.m., stating that Crowley's information had "been verified, with Defendants knowing her home and business addresses and post office box number." Karra Crowley also made a posting herself on BLM's Facebook page the following day again disavowing the statements and identifying the specific email address used to make them as not belonging to her, but again Defendants refused to even respond, let alone take down the offensive posts.

Plaintiffs argue that this series of emails and postings, which are described in Plaintiffs' Complaint and further attached as exhibits by both parties to their motion papers,[4] infer that Defendants knew or acted with reckless disregard as to the probable falsity of the emails allegedly sent by Ms. Crowley. As Plaintiffs point out, the inherent improbability of anyone actually sending such vile emails and attaching their name and business identification thereto made it necessary for Tanya Faison to report that Plaintiffs' identities and contact information had "been verified." Moreover, those alleged "assurances" came only a matter of minutes after Karra Crowley had emailed Ms. Faison directly asking her to remove the false postings on grounds that she was not the author

---

[4] Both parties have attached materials outside the Complaint to their filings in support of, and in addition to, the motions now before the Court. Because an anti-SLAPP motion, like a motion to dismiss brought under Rule 12(b)(6), tests the legal sufficiency of a plaintiff's claim, Rule 12(b)(6) standards typically apply to both motions. Planned Parenthood Fed'n of Am. v. Ctr. For Med. Progress, 890 F.3d 828, 834 (9th Cir. 2018), which include a general prohibition against considering matters beyond the pleadings. However, where, as here, the Complaint refers to emails and postings that are not physically attached, they can properly be considered. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). Additionally, as indicated above, Plaintiffs may submit supporting affidavits to support their burden in showing a prima facie claim, so the declarations submitted by Karra and Christopher Crowley are also proper. Cal. Code Civ. P. § 425.16(b)(2).

of the emails and they had not been sent from her address. And, the fact that Defendants posted the emails less than two hours after the last of three emails purporting to be from Ms. Crowley had been sent supports the not improbable inference that no verification whatsoever had been done beforehand despite Defendants' request that its followers make Plaintiffs "famous." The timing of these events supports an inference that Defendants acted with reckless disregard for the truth.

Finally, as Plaintiffs point out, "[w]hy would Defendants command their friends to make Plaintiffs famous" in the first place? Pls.' Opp., 15: 23-24. Plaintiffs describe the only reasonable inference as follows:

> The patently obvious reason is to harm Ms. Crowley, her husband and their business. In other words, Defendants intentionally incited their friends to do harmful things to Plaintiffs by Defendants' defamatory posts—which shows Defendants' ill will/or hatred towards Plaintiffs.

Id. at 15:24-16:1. The hateful slew of postings and messages that Defendants' conduct engendered just that response—both personal threats to Plaintiffs, some of which were chillingly violent as described above, and threats to harm their business.

Given all of the above, in this Court's view the postings, emails, and reasonable inferences therefrom show enough of a likelihood that Plaintiffs can demonstrate "actual malice" (through Defendants' malicious/reckless behavior) to withstand the anti-SLAPP motion to strike on that basis. The Court therefore now turns to the second basis relied upon by Defendants in arguing that Plaintiffs cannot state any viable prima facie case of libel against them.

### 2. Communications Decency Act

The so-called Communications Decency Act, 47 U.S.C. § 230 (the "Act") provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider (id. at subdivision (c)(1)), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." Id. at subdivision (e)(3). "§ 230(c) provides broad immunity for publishing content provided

primarily by third parties." Carafano v. Metrosplash.com, Inc., 339 F.3d 1119, 1123 (9th Cir. 2003). The Act "mandates dismissal if (i) [the defendant] is a 'provider or user of an interactive computer service,' (ii) the information for which [the plaintiff] seeks to hold [the defendant] liable was 'information provided by another information content provider,' and (iii) the complaint seeks to hold [the defendant] liable as the 'publisher or speaker' of that information." Klayman v. Zuckerberg, 753 F.3d 1354, 1357 (D.C. Cir. 2014) (quoting 47 U.S.C. § 230(c)(1)). "In short, a person defamed on the internet can sue the original speaker, but typically cannot sue the messenger." Ricci v. Teamsters Union Local 456, 781 F.3d 25, 28 (2d Cir. 2015) (internal quotations marks omitted).

In applying the Act's principles to the present matter, Defendants allege, and Plaintiffs do not dispute, that Facebook qualifies as an interactive computer service. Klayman, 753 F.3d at 1357. Nor is there any dispute that Defendants qualify as users of such services for purposes of the Act. See Batzel v. Smith, 333 F.3d 1018, 1030 (9th Cir. 2003 (quoting 47 U.S.C. § 230(c)(1)); see also Barrett v. Rosenthal, 40 Cal. 4th 33, 58-59 (2006). Instead, whether the Act insulates Defendants from liability turns on whether a third party was the sole content provider of the postings to Defendants' Facebook page, or whether Defendants also played a role in creating and/or developing those postings. Batzel, 333 F.3d at 1031.

Defendants allege they are afforded immunity under the Act because the emails purported to come from Karra Crowley were sent by a third party under circumstances where Defendants could reasonably conclude those postings were provided for posting on the internet. Id. at 1034. To the extent they published the third-party emails, Defendants claim they are immunized regardless of their role in selecting and/or editing the emails posted to Facebook. See Carafano, 339 F.3d at 1124. Therefore, they allege that they cannot be sued for failing to "use reasonable care to determine whether Plaintiffs were the authors or senders of the purported emails . . ." as Plaintiffs allege. See Compl., ¶ 22.

Defendants nonetheless ignore certain key distinctions that make their reliance on

15

the Act problematic.  Immunity under § 230 requires that the third-party provider, here the individual masquerading as Karra Crowley, have "provided" the emails to Defendants "<u>for use on the Internet</u> or another interactive computer service."  <u>Batzel</u>, 333 F.3d at 1033 (emphasis in original).  Here, as Plaintiffs point out, the emails were sent directly to BLM Sacramento's general email address.  "[I]f the imposter intended for his/her emails to be posted on BLM Sacramento's Facebook page, the imposter could have posted the email content <u>directly</u> to the Facebook page," yet did not do so.  Pls.' Opp to Mot. to Strike, 18:9-11 (emphasis in original).  Those circumstances raise a legitimate question as to whether the imposter indeed intended to post on the internet, and without a finding to that effect the Act's immunity does not apply.[5]

These concerns are further amplified by the fact that Karra Crowley notified Defendants that she did not author the emails, and they did not come from her email address within 24 hours after the last email attributed to her was posted.  Defendants nonetheless refused to take down the offending posts from its Facebook page, causing the hateful and threatening messages received by Plaintiffs to continue.  As set forth above, one of the most disgusting of those messages, in which the sender graphically described how he or she was going to kill Karra Crowley and her daughter, was sent nearly a month later.

In addition, while the Act does provide immunity for materials posted on the internet which the publisher had no role in creating, here Defendants did not simply post the emails.  They went on to suggest that Karra Crowley "needs to be famous" and represented that her "information has been verified", including business and home addresses.  Compl., ¶¶ 13-14.[6]  It is those representations that Plaintiffs claim are

---

[5] The requirement that materials be provided with an intent they be posted on the internet makes sense since, as <u>Batzel</u> notes, otherwise "users and providers of interactive computer services could with impunity intentionally post material they knew was never meant to be put on the Internet."  333 F.3d at 1033.  This could result in "nearly limitless immunity for speech never meant to be broadcast over the Internet." <u>Id.</u>

[6] While Defendants appear to argue that they never actually claimed to have verified Ms. Crowley's identity as the actual sender of the offending emails, the Court finds any such argument unpersuasive in the context of Defendants' later posting that her "information has been verified" and "she

libelous,[7] particularly after Defendants persisted in allowing the postings to remain even after they had been denounced as false, a decision which caused further harassment and threats to be directed towards Plaintiffs.  As the California Supreme Court noted in Barrrett, Plaintiffs remain "free under section 230 to pursue the originator of a defamatory Internet publication."  40 Cal. 4th at 63.

In sum, Plaintiffs have pointed to evidence, from which legitimate inferences can be drawn, which supports their claim that the Act does not immunize Defendants from liability under the facts of this case.  Therefore, Defendants' reliance on the Act to eliminate any potential for liability here appears unfounded.  Having determined that both arguments advanced by Defendants to show that Plaintiffs cannot assert a prima facie case of libel fail, this Court finds that Plaintiffs have satisfied their burden and accordingly DENIES Defendants' special anti-SLAPP Motion to Strike.

### B.   Motion to Dismiss

To a large extent, Defendants' Motion to Dismiss for failure to state a viable claim tracks the arguments already made and disposed of above.  Like Defendants' anti-SLAPP motion, which argued that Plaintiffs could show no prima facie showing of prevailing on the merits, their Motion to Dismiss similarly contends 1) that the Act immunizes Defendants from liability; and 2) that Plaintiffs cannot show the "actual malice" needed to support a libel claim where the public interest has been implicated.  Those arguments fail for the same reasons already articulated.

The only new argument advanced by Defendants' Motion to Dismiss is their contention that the so-called "common interest" privilege applies.  That privilege, codified by California Civil Code § 47(c), provides as follows:  "A privileged publication or broadcast is one made . . . [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to

---

has been verified."  Compl., ¶ 14.  Posting such information literally on the heels of having published the emails on Defendants' Facebook page less than two hours later creates an inference that Defendants were advancing Ms. Crowley as the author.  On a motion to dismiss, the court must adopt whatever plausible interest supports a valid claim.  Starr v. Baca, 652 F.3d 1202, 1216-17 (9th Cir. 2011).

[7] See Pls.' Opp to Defs.' Mot. to Dismiss, ECF No. 10, 5:13-19.

the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." Cal. Civ. Code § 47(c).

Whether or not the common interest privilege applies is approached in an analytical manner similar to that employed in an anti-SLAPP motion. Burden shifting occurs in both instances. In assessing a common interest privilege, the defendant bears the initial burden of establishing that the statement in question was indeed made on a privileged occasion. Then, provided defendant makes an initial showing that the privilege applies, the burden shifts to plaintiff to show that the statement in question was made with malice. See Taus v. Loftus, 40 Cal. 4th 683, 721 (2007). The malice necessary to defeat the privilege "is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." Id. (emphasis in original).

Here, Defendants argue that the privilege applies because the emails allegedly authored by Karra Crowley and the sentiments they expressed (which included remarks on the futility of the BLM movement, the perceived superiority of white people, and calls to "bring slavery back") were of "sufficient interest" to BLM Sacramento's membership and others to merit posting on Defendants' Facebook page.

Despite any such general interest on the part of BLM followers, however, case law interprets the scope of the common interest privilege much more narrowly. The common "interest" implicated by § 47(c) is typically directed to a defendant protecting his own pecuniary or proprietary interest with the requisite relationship between the parties one involving contractual, business or similar ties. See Kashian v. Harriman, 98 Cal. App. 4th 892, 914 (2002). Thus, the statute has been deemed inapplicable to the publication of matters of general public interest, the category into this case most closely resembles. See, e.g., Brown v. Kelly Broadcasting Co., 48 Cal. 3d 711, 738 (1989).

Consequently, the Court does not find that Defendants have met their initial burden in showing that the common interest privilege applies. Even if they had, the fact that the Court finds evidence supporting actual malice in this case would defeat the privilege in any event. Defendants' Motion to Dismiss is thus DENIED.

### C. Motion to Amend

To the extent Plaintiffs' Motion to Amend seeks leave to add Robert Leslie Adair, an individual who has allegedly been identified as the true author of the emails purported to have been written by Karra Crowley, as an additional Defendant, its merit would appear clear given counsel's declaration that Adair was identified well after Plaintiffs' original Complaint was filed, and only after the Placer County Sheriff's Department served a subpoena on the cellular carrier for the phone used to send the emails. Decl. of Jeffrey Ochrach, ECF No. 14-2, ¶ 3.

Defense counsel nonetheless declined to stipulate to amending the Complaint, citing his pending motions to dismiss and to strike and pointing out that those motions would effectively be mooted in the event an amended complaint be filed.

Since Defendants' previously filed motions have now been adjudicated, defense counsel's objection to amending the Complaint to adding Robert Leslie Adair as a Defendant is no longer viable. The Court thus finds that amendment to that effect is proper.

The only remaining issue is the fact that the proposed First Amended Complaint ("FAC") also seeks to add a second cause of action, for intentional infliction of emotional distress. That claim, which Plaintiffs intend to assert both against Defendants Black Lives Matter, Sacramento and Tanya Faison ("existing Defendants"), along with additional Defendant Robert Leslie Adair, alleges that Defendants' conduct was "outrageous" and "so extreme as to exceed all bounds of that usually tolerated in a civilized community." FAC, Ex. A. to Ochrach Decl., ECF No. 14-2, ¶ 29. Existing Defendants contend that the subject matter of Plaintiffs' FAC fails to demonstrate any such outrageous conduct.

The Court disagrees. As set forth above, the timing of existing Defendants' Facebook postings suggests that they immediately posted the subject emails to the internet despite the inherent probability that an individual would not only identify herself and her business but send such racial offensive emails to the local representative of an organization at the forefront of race relation issues in this country. Moreover, not only did Defendants post the emails, in essence they urged their followers to make Ms. Crowley "famous" by assuring them that they had "verified" her "information" and addresses in Roseville and Loomis. Then, when Ms. Crowley contacted Defendant Faison directly and said that the emails were not from her or even from her email address, Defendants declined to even consider her request to take the offensive messages off their website, which resulted harassment and death threats that persisted even a month later. Because this Court cannot rule out a reasonable jury finding all of this to be outrageous conduct, amendment to include an intentional infliction of emotional distress cause of action is proper, particularly since amendment should be permitted with extreme liberality at this stage of the proceedings.

## CONCLUSION

For all the foregoing reasons, the Court denies both Defendants' Special Motion to Strike (ECF No. 7) and Defendants' Motion to Dismiss (ECF No. 8) in their entirety. Plaintiffs' Motion to File First Amended Complaint (ECF No. 14) is, GRANTED. Plaintiffs are directed to file their proposed First Amended Complaint not later than ten (10) days after this Memorandum and Order is electronically filed. No extensions to this requirement will be permitted.

IT IS SO ORDERED.

DATED: March 3, 2022

MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE